**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| RAMAZAN K., | Case No. 2:24-cv-06138 (BRM) |
| Plaintiff, | **OPINION** |
| v. | |
| LELAND DUDEK, Commissioner of the Social Security Administration, | |
| Defendant. | |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Plaintiff Ramazan K.'s ("Plaintiff") appeal of the final decision of the Commissioner of the Social Security Administration ("Commissioner"[1]) denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381–83, and for Disability Insurance Benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 402–34. (ECF Nos. 1, 14.) The Commissioner filed an opposition. (ECF No. 16.) As of the date of this Opinion, Plaintiff has not filed a reply. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). Having reviewed and considered the submissions filed in connection with this appeal and having declined to hold oral argument in accordance with

---

[1] Leland Dudek became Acting Commissioner of the Social Security Administration ("SSA") on February 16, 2025. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Mr. Dudek is substituted as Defendant (previously, Martin O'Malley) in this suit. *See also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

Local Civil Rule 78.1(b), for the reasons set forth below and for good cause shown, the Commissioner's decision is **AFFIRMED**.

## I. BACKGROUND

### A. Procedural History

This case arises out of Plaintiff's challenge to the Commissioner's denial of his application for SSI and DIB. (ECF No. 1.) On March 2, 2021, Plaintiff applied for SSI and DIB, alleging disability beginning November 15, 2019,[2] due to depression, bipolar disorder, anxiety, stomach pains, and post-traumatic stress disorder ("PTSD"). (ECF No. 4 (Transcript of Proceedings[3] ("Tr.")) at 17–20, 93.) The SSA initially denied Plaintiff's claim on June 11, 2021, and again upon reconsideration on October 21, 2021. (*Id.* at 17.)

Plaintiff then filed, through counsel, a written request for a hearing (*id.*), and on January 6, 2023, Administrative Law Judge Ricardy Damille ("ALJ Damille") held a hearing regarding Plaintiff's claim (*id.*). In a decision dated March 24, 2023, ALJ Damille found Plaintiff not disabled within the meaning of the Act because he could perform work that exists in significant numbers in the national economy. (*Id.* at 19–27.) ALJ Damille's decision became the final decision of the Commissioner after the Appeals Council denied Plaintiff's request for review on March 12, 2024. (*Id.* at 1–6.)

---

[2] ALJ Damille's decision notes Plaintiff previously applied for and was denied DIB and SSI benefits on November 14, 2019, in a decision upheld by the SSA's Appeals Council and not subject to this appeal. (ECF No. 4 at 16.) In this proceeding, Plaintiff initially identified an onset date of January 29, 2021 (*id.* at 271), which was amended at the hearing to November 15, 2019, encompassing the period after Plaintiff's prior denial (*id.* at 16.)

[3] The administrative record is set forth in this transcript. (*See generally* ECF No. 4.)

Having exhausted his administrative remedies, Plaintiff filed his appeal with this Court on May 14, 2024. (ECF No. 1.) Plaintiff filed his moving brief on February 25, 2025 (ECF No. 14), and the Commissioner filed an opposition on March 26, 2025 (ECF No. 16). Plaintiff had not filed any reply by the date of this Opinion.

### B.    Factual Background

#### 1.    Plaintiff's History

Plaintiff is a 40-year-old U.S. Army veteran who served in Iraq. (Tr. at 42–44, 408.) He completed high school and took some college courses. (*Id.* at 43.) The conditions on which basis Plaintiff applied for SSI and DIB— depression, bipolar disorder, anxiety, stomach pains, and PTSD—stem from his military service from approximately August 2008 to June 2011. (*Id.* at 49–50, 276.) Plaintiff indicates he stopped working sometime in 2016 or 2017 because of those conditions. (*Id.* at 42, 275.) Prior to that time, he held positions as a janitor and as a waiter. (*Id.* at 276, 298.) Plaintiff takes several medications to attempt to address symptoms associated with his conditions, including anxiety, panic attacks, stomach pain, and depression. (*Id.* at 289.)

In his self-assessment, completed March 17, 2021 (the "Function Report"), Plaintiff describes performing some personal tasks without issue but having difficulty with others. (*Id.* at 284.) Plaintiff reports he can take care of his personal grooming but needs reminders to take his prescribed medications. (*Id.*) Plaintiff states he can prepare simple meals and perform some chores, such as taking out the trash and laundry. (*Id.*) Plaintiff also indicates he regularly leaves the house alone, either by walking or driving, and can shop for food and clothing. (*Id.* at 285) Additionally, Plaintiff states he can handle his finances, participates in hobbies such as reading, watching television, and fishing, and socializes with friends on a regular basis. (*Id.* at 285–86.) However, Plaintiff also reports his conditions affect his memory, concentration, understanding, and hearing,

as well as his ability to complete tasks and follow instructions. (*Id.* at 287.) He claims he cannot follow written or spoken instructions and can pay attention for only two minutes at a time, but is able to manage changes to his routine. (*Id.*) Plaintiff describes being overwhelmed by stress and experiencing fear and panic attacks, as well as suffering from insomnia. (*Id.* at 287–88.) Plaintiff's wife submitted a function report (the "Third-Party Function Report") that echoes Plaintiff's description of his condition but also indicates Plaintiff at times isolates himself, is unable to get out of bed, and has experienced increasing severity of his PTSD symptoms. (*Id.* at 290–97.) Plaintiff's medical records show he has had a diagnosis of depression and PTSD since at least 2016. (*Id.* at 356.) Records from the Department of Veteran's Affairs ("VA") confirm Plaintiff's PTSD diagnosis is connected to his military service, and he received a 70% service-connected disability designation. (*Id.* at 25; 366.) These records also contain notes from VA healthcare providers about Plaintiff's involvement in regular exercise, such as playing soccer, biking, swimming, and running. (*Id.* at 383, 387.) Plaintiff's provided medical documents give little insight into how his mental impairments affect him, other than to note he needed to make a follow-up appointment with the VA's mental health center for depression. (*Id.* at 362, 384.)

Plaintiff underwent a mental status examination by Dr. J. Theodore Brown ("Dr. Brown") on May 17, 2021. (*Id.* at 408.) Dr. Brown reported Plaintiff stated he required medication to sleep and has flashbacks and night terrors at night. (*Id.* at 409.) Plaintiff also told Dr. Brown he experienced "on and off" periods of depression and crying episodes, as well as mood swings, but "[m]edications help level him out." (*Id.*) Dr. Brown described that Plaintiff experienced symptoms of panic and anxiety and woke up with nightmares multiple times a month but found him to be "pleasant and cooperative" with appropriate presentation, hygiene, and dress. (*Id.*) Dr. Brown also summarized Plaintiff's remarks regarding his "mode of living," noting he "has friends" and family

4

relationships, his hobbies include "playing chess, reading books, [and] boating," and he manages household duties and chores alongside his wife. (*Id.* at 410.)

Dr. Brown assessed Plaintiff via a series of mental exercises. (*Id.* at 409–10.) Plaintiff was able to interpret common phrases, provide information such as the number of months in a year or the use of a thermometer, group like items, and use judgment when presented with a scenario. (*Id.*) Plaintiff could also perform basic mathematical calculations, but he could not count backwards from 100 by 7s or 3s. (*Id.* at 410.) Dr. Brown also reported that, when asked to remember a list of three items, Plaintiff could repeat them back immediately but did not remember any after five minutes. (*Id.*) Dr. Brown concluded Plaintiff's profile corresponded with bipolar disorder, generalized anxiety disorder, and PTSD, and he assessed Plaintiff's cognitive and intellectual functioning as "average." (*Id.*) He made no specific functional findings, but noted "[t]here is nothing at this time to contraindicate [Plaintiff] being able to manage his own funds." (*Id.*)

### 2. Administrative Hearing and ALJ's Determination

During the administrative hearing before ALJ Damille on January 6, 2023, Plaintiff testified about his conditions and updated his work history. Plaintiff disclosed that, in January of 2022, he took on a part-time busboy job in a restaurant about two nights a week for around four to five hours a night. (*Id.* at 43–44.) Plaintiff stated that he left this job in July of the same year because he was unable to cope with the stress and anxiety of the restaurant environment and began experiencing panic attacks on the job. (*Id.* at 45.) Plaintiff indicated he experienced panic attacks three or four times a week generally. (*Id.* at 46.) During the period he held the busboy job, these panic attacks occurred while he was working at the restaurant two or three times a month. (*Id.* at 45–47.) Plaintiff described needing to sit down or "hide in the corner" when experiencing a panic attack, accompanied by mood swings and a depressive mood. (*Id.* at 47–48.) Plaintiff stated his

panic attacks could last three to four hours, encompassing the actual panic attack and the recovery time necessary to resume normal activity. (*Id.* at 48–49.) Plaintiff described that, because of his PTSD, he had dreams about combat, and certain sounds like sirens or yelling would trigger him instinctively to hide. (*Id.* at 50.) Plaintiff reported experiencing these symptoms every other night, despite taking prescribed medication. (*Id.*) Plaintiff also stated he sleeps two to three hours a night with medication, and he is unable to sleep without it. (*Id.* at 50–51.)

When asked about his daily activities, Plaintiff described being involved in watching his children, usually with the support of his wife or mother. (*Id.* at 52–53.) Plaintiff reported regularly driving, including taking his daughter to school, but not being able to drive for long periods. (*Id.* at 53.) Plaintiff stated he performs basic errands, such as grocery shopping, and gets himself to the VA for twice-monthly appointments with a psychiatrist and social worker. (*Id.* 53.) Generally, Plaintiff claimed he was able to function normally inside his home but struggled to function in public. (*Id.* at 54.) When asked if he believed he could hold a full-time, eight-hour-a-day job without experiencing mental health symptoms, Plaintiff stated he could not. (*Id.* 55–56.)

A vocational expert, Dawn Blythe ("Ms. Blythe"), also testified at Plaintiff's hearing. (*Id.* at 57.) Ms. Blythe provided classifications for Plaintiff's past work. (*Id.*) When asked by ALJ Damille if a hypothetical person with the same background as Plaintiff and a series of work restrictions[4] could perform any of Plaintiff's past work, Ms. Blythe stated the hypothetical individual could perform a "commercial cleaner" job and provided examples of three other, similar job classes. (*Id.* at 57–58.) ALJ Damille then asked if the same hypothetical person could perform

---

[4] ALJ Damille asked Ms. Blythe about the capacities of a hypothetical individual with Plaintiff's background and the following restrictions: "able to understand, remember, and carry out simple instructions; restricted to work involving few workplace changes; occasional decision-making; can have occasional interaction with supervisors; cannot work in tandem with co-workers; and can have no interaction with the public." (*Id.* at 57.)

those tasks with the additional restriction that he or she needed to be "off task for 15% of the workday above normal breaks" or needed to miss days of work per month due to symptoms. (*Id.* at 58.) Ms. Blythe stated such a person would not be able to sustain any employment if he or she needed off task time for more than 10% of the normal workday or missed two days of work per month. (*Id.*) In response to questions from Plaintiff's counsel, Ms. Blythe elaborated the 10% threshold was equal to performing job requirements for "53, 54 minutes out of every hour," and the job classes she identified would not tolerate regular 10-to-15-minute breaks. (*Id.* at 59–60.)

In his written decision, ALJ Damille found Plaintiff is not disabled under the meaning of the Act. (*Id.* at 27–28.) ALJ Damille determined Plaintiff has not been engaged in substantial gainful activity since November 15, 2019, and has the following severe impairments: "depression, bipolar disorder, anxiety and post-traumatic stress disorder." (*Id.* at 20.) However, he found Plaintiff's impairments, both individually or in combination, do not meet or equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 20–22.)

Specifically, ALJ Damille determined Plaintiff's claimed mental impairments did not "meet or medically equal the criteria of listings 12.04 and 12.15," including the "paragraph B" criteria that recognize disability when a mental impairment results in "one extreme limitation or two marked limitations." (*Id.* at 20.) Based on Dr. Brown's evaluation and Plaintiff's testimony, ALJ Damille found Plaintiff had mild limitations in "understanding, remembering or applying information" and "adapting or managing oneself," and moderate limitations in "interacting with others" and "concentrating, persisting, or maintaining pace." (*Id.* at 21.) While ALJ Damille acknowledged Dr. Brown's reports that Plaintiff "was unable to perform Serial 7's or Serial 3's accurately" and could not remember three items after five minutes had passed, ALJ Damille credited Dr. Brown's findings that Plaintiff was able to perform other simple tasks, had "fluent

and clear" speech, had "coherent and goal directed" thought processes, had normal affect and ability to express himself, and reported "tak[ing] care of his personal needs independently." (*Id.*)

ALJ Damille then determined the "paragraph C" criteria, that an individual "has only marginal adjustment" to changes in his environment, were not met. (*Id.* at 22.) ALJ Damille also noted his description of why Plaintiff did not meet the "paragraph B" criteria was not a residual functional capacity ("RFC") assessment, which ALJ Damille proceeded to provide. (*Id.*) Based on the entire record, ALJ Damille assessed Plaintiff's RFC and found he could perform "a full range of work at all exertional levels but with the following nonexertional limitations:

> the claimant is able to understand, remember and carry out simple instructions. He is restricted to work involving few work place changes and occasional decision making. He can have occasional interaction with supervisors but he cannot work in tandem with coworkers and can have no interaction with [the] public.

(*Id.* at 23.) ALJ Damille proceeded to summarize Plaintiff's testimony about his history and mental health symptoms, as well as his daily activities. (*Id.*) While he found the testimony consistent with Plaintiff's "medically determinable impairments," he concluded Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*) ALJ Damille acknowledged Plaintiff's medical records indicated a "longitudinal history of mental distress" and regular visits to VA mental health services but remarked "the record contains no detailed treatment notes or mental status examinations results from the purported treatment," nor did the included treatment notes "show any cognitive deficits." (*Id.* at 23–24.) ALJ Damille also cited Dr. Brown's findings in the mental status examination that medications helped Plaintiff manage his symptoms and that he "denied any physical or violent behavior," did not demonstrate any "significant memory deficits," and did not report "any thought disturbances or other behaviors" necessitating psychiatric attention. (*Id.* at 24.)

ALJ Damille also reviewed prior medical opinions and findings in the record history and from the VA and found they aligned with the medical evidence of record or were otherwise not persuasive. (*Id.* at 24–25.) ALJ Damille credited assessments by the New Jersey Division of Disability Determination Services ("DDS") as consistent with the medical record and found they described mild and moderate limitations to Plaintiff's vocational abilities based on his psychological diagnoses. (*Id.* at 25.) He also found the limited functional assessments provided by Dr. Francky Merlin and Dr. Brown to be partially persuasive but limited in the light they shed on Plaintiff's vocational abilities. (*Id.* at 25.) While ALJ Damille considered the Function Report and Third-Party Function Report by Plaintiff and his wife, he concluded the "fairly active daily activities" they describe Plaintiff undertaking indicated a higher RFC than Plaintiff claimed. (*Id.*) Finally, ALJ Damille acknowledged the VA gave Plaintiff "a service-connected disability evaluation of 70%" but determined this finding was not persuasive because the VA uses a different disability standard, and "these records do not contain any objective medical signs, symptoms, or laboratory results . . . nor do they provide a vocational assessment" to support their determination. (*Id.*) Accordingly, ALJ Damille explained Plaintiff's RFC was informed by the evidence in the record and his conclusion that Plaintiff "would have difficulty performing complex tasks" or interacting with others on a regular basis. (*Id.* at 25–26.)

Consistent with the five-step sequential evaluation process for SSI and DIB benefits, *see infra* Section III, ALJ Damille found that, while Plaintiff could not perform past relevant work, he could perform jobs existing in significant numbers in the national economy. (*Id.* at 26.) ALJ Damille cited to Ms. Blythe's testimony regarding the types of jobs available fitting "the claimant's age, education, work experience, and [RFC]" as supporting the determination that Plaintiff could

9

meet all the requirements of jobs available at significant numbers. (*Id.* at 27.) Accordingly, ALJ Damille determined Plaintiff is not disabled within the meaning of the Act. (*Id.* at 27–28.)

## II.    STANDARD OF REVIEW

When reviewing a final decision of the Commissioner, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive by a reviewing court if supported by "substantial evidence" in the record. 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). A district court must affirm an ALJ's decision if it is supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985) (citations omitted). Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545 (3d Cir. 2003). The Supreme Court reaffirmed this understanding of the substantial evidence standard in *Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019). To determine whether an ALJ's decision is supported by substantial evidence, a court must review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). "Courts are not permitted to re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Accordingly, a court may not set an ALJ's "decision aside if it is supported by substantial evidence, even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

### III.  THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

Under the Act, the SSA is authorized to pay SSI and DIB to "disabled" persons. 42 U.S.C. § 1382(a). A person is "disabled" if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person is unable to engage in substantial gainful activity

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated under the Act establish a five-step process for determining whether a claimant is disabled for purposes of SSI and DIB. 20 C.F.R. § 404.1520.[5] First, the ALJ determines whether the claimant has shown he or she is not currently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), (b); *see Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *Id.* Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c);

---

[5] Regulations for DIB and SSI are virtually identical. For the purposes of this appeal, citations will only be made to the DIB regulations regarding disability evaluation, 20 C.F.R. §§ 404.1501, *et seq.* The parallel SSI benefits regulations are found under 20 C.F.R. §§ 416.901, *et seq.*

*see Bowen*, 482 U.S. at 140–41. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). These activities include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

*Id.* A claimant who does not have a severe impairment is not considered disabled. 20 C.F.R. § 404.1520(c); *see Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

Third, if a claimant's impairment(s) is found to be severe, the ALJ then determines whether the impairment(s) meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates his or her impairment(s) is equal in severity to, or meets, one of the impairments on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See* 20 C.F.R. § 404.1520(d); *see also Bowen*, 482 U.S. at 141. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526. If there is more than one impairment, then the ALJ must consider whether the combination of impairments equals any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains

the RFC to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(e), (f); *Bowen*, 482 U.S. at 141. Step four involves three sub-steps:

> (1) the ALJ must make specific findings of fact as to the claimant's [RFC]; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the [RFC] to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000) (citations omitted). When determining RFC, an ALJ's consideration of medical opinion evidence is subject to the framework articulated in 20 C.F.R. § 404.1527 (for claims filed before March 27, 2017) or 20 C.F.R. § 404.1520c (for claims filed after March 27, 2017).

Claimants are not disabled if their RFC allows them to perform their past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). However, if the claimant's RFC prevents him or her from doing so, or if the claimant has no past relevant work, an ALJ proceeds to the fifth and final step of the process. 20 C.F.R. § 404.1520(a)(4)(g). The final step requires the ALJ to "show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428; 20 C.F.R. § 404.1520(a)(4)(v). In doing so, "[t]he ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled." *Plummer*, 186 F.3d at 428; 20 C.F.R. § 404.1523. An ALJ typically seeks the assistance of a vocational expert at this final step. *Plummer*, 186 F.3d at 428.

The claimant bears the burden of proof for steps one, two, and four. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). Neither side bears the burden of proof for step three "[b]ecause step three involves a conclusive presumption based on the listings[.]" *Id.* at 263 n.2; *see Bowen*, 482 U.S. at 146 n.5. An ALJ bears the burden of proof for step five. *Sykes*, 228 F.3d at 263.

On appeal, the harmless error doctrine[6] requires a plaintiff to show, as to the first four steps: (1) an error occurred; and (2) but for that error, they might have proven their disability. *Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016). In other words, when reviewing an appeal based on the first four steps, a court considers whether the plaintiff articulated a basis for a decision in their favor, based on the existing record. If the plaintiff cannot, it is unlikely they will meet their burden of showing an error was harmful. *See, e.g.*, *Lippincott v. Comm'r of Soc. Sec.*, 982 F. Supp. 2d 358, 380–81 (D.N.J. 2013) (finding ALJ's error was harmless); *Powers v. Comm'r of Soc. Sec.*, Civ. A. No. 19-21970, 2021 WL 1207793, at *7 (D.N.J. Mar. 31, 2021) (finding the plaintiff had not demonstrated she was prejudiced by the ALJ's decision and had not shown an error occurred amounting to harm).

The court's review of legal issues within this appeal is plenary. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). Factual findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes*, 228 F.3d at 262. Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). Substantial evidence also "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation and internal quotation marks omitted). When

---

[6] Harmless error review, which requires the appellant to demonstrate harm, applies to administrative appeals. *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016). The Supreme Court explained its operation in a similar procedural context in *Shinseki v. Sanders*, 556 U.S. 396, 407–11 (2009), which concerned review of a governmental agency determination. The Supreme Court stated: "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Id.* at 409. In such a case, "the claimant has the 'burden' of showing that an error was harmful[.]" *Id.* at 410.

substantial evidence exists to support the Commissioner's factual findings, this Court must abide by those determinations. *See id.* (citing *Schaudeck*, 181 F.3d at 431); 42 U.S.C. § 405(g).

## IV. DECISION

Plaintiff appeals ALJ Damille's decision and requests the Court either reverse the decision and find Plaintiff is entitled to a period of disability beginning on November 15, 2019, or, in the alternative, vacate the decision and remand for a new hearing. (ECF No. 1.) Plaintiff challenges ALJ Damille's determinations at both step three and step four of the evaluation process. (ECF No. 14.) Specifically, Plaintiff argues ALJ Damille's step three determination that his severe mental impairments do not establish a medical equivalence is not supported by substantial evidence.[7] (*Id.* at 6–29.) Plaintiff also contends ALJ Damille's RFC is not supported by substantial evidence because it fails to clearly account for the moderate limitations ALJ Damille identified in concentrating, persisting, or maintaining pace. (*Id.* at 29–41.) In response, the Commissioner contends ALJ Damille's step three and step four findings were adequately supported by his reasoning and the record evidence and withstand judicial review. (ECF No. 16.) The Commissioner, therefore, requests the Court affirm ALJ Damille's decision.

### A. Plaintiff's Challenge to ALJ Damille's Step Three Determination

Plaintiff argues ALJ Damille failed to properly consider the combined effect of his recognized severe mental impairments—depression, bipolar disorder, anxiety, and PTSD—when assessing medical equivalence to a listed impairment, as required by SSA regulations in step three. (ECF No. 14 at 6–7.) Citing the Third Circuit's opinion in *Torres v. Comm'r of Soc. Sec*, 279 F. App'x. 149, 154 (3d Cir. 2008), Plaintiff contends an ALJ must explicitly "combine all severe

---

[7] At step two, ALJ Damille determine one of Plaintiff's claimed impairments, gastrointestinal reflux disease, was non-severe. (Tr. at 20.) As Plaintiff does not challenge this finding, the Court reviews the propriety of ALJ Damille's decision without discussing it.

impairments and compare the joint effect of all impairments against [those on the Impairment List] to determine medical equivalence," which he asserts ALJ Damille failed to do. (*Id.* at 7–8.) More specifically, Plaintiff argues that, when no single severe impairment matches a listed impairment, the ALJ "must combine the totality of medical impairments and pathologies and compare that 'whole person' to one or more of the listed impairments in a discussion of 'medical equivalence,'" and in doing so "provide sufficient analysis of the evidence and the requirements of the listing" to enable the Court's review. (*Id.* at 8–9 (quoting *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112 (3d Cir. 2000)).) Plaintiff asserts ALJ Damille failed to conduct this comparison properly on several fronts. First, Plaintiff argues ALJ Damille did not explicitly consider the Impairment List entry for severe anxiety disorder, 12.06, in the combined medical equivalence evaluation, despite finding Plaintiff's anxiety disorder was a severe impairment, and failed to discuss the diagnosis criteria of all the listings explicitly (known as "paragraph A"). (*Id.* at 11.) Second, Plaintiff contends ALJ Damille's evaluation of the so-called "paragraph B" and "paragraph C" criteria[8] failed to utilize the considerations called for in the regulations. (*Id.* at 11–29.) Instead, Plaintiff asserts ALJ Damille's evaluation of the paragraph B criteria reused the same evidence to find Plaintiff had a mild or moderate limitation for all the paragraph B criteria, thereby failing to consider how the regulations define these criteria and the scale for assessing a limitation. (*Id.* at 11–26.) Similarly, Plaintiff contends ALJ Damille's assessment of the paragraph C criteria is too cursory to afford meaningful judicial review on the C1 and C2 criteria and cannot be harmless error. (*Id.* 26–29.)

    The Commissioner argues ALJ Damille's step three assessment was reasonable and

---

[8] The Impairment List provides criteria to assess if a claimant's mental disorder merits a presumption of disability under step three. 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00A. The three listings corresponding to the impairments ALJ Damille recognized—12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders) and 12.15 (trauma- and stressor-related disorders)—have the same requirement structure, described further *infra*. *See id.*

accounted for the evidence in the record, and Plaintiff's objections to the decision are unavailing. (ECF No. 16 at 9–22.) First, the Commissioner asserts ALJ Damille's step three evaluation was proper, including on the paragraph B and paragraph C criteria, because the ALJ considered Plaintiff's own statements but relied on relevant observations and conclusions from Dr. Brown's assessment that found Plaintiff was cooperative and pleasant, had coherent thought processes and cognition, and participated in household duties and his own hobbies, despite some limits in his recall memory and difficulty with serial subtraction. (*Id.* at 9–10.) Next, the Commissioner dismisses Plaintiff's arguments that ALJ Damille erred by failing to cite 12.06 by number, since ALJ Damille "directly cited to Plaintiff's anxiety disorder throughout the decision," and by neglecting to discuss the paragraph A criteria. (*Id.* at 10–11.) This is because paragraph A sets forth only diagnoses, and "Plaintiff cannot prove a presumptively disabling impairment under any of these listings if he does not also establish the Paragraph "B" or Paragraph "C" criteria," meaning it is harmless error. (*Id.* at 11–12 (citing *Holloman*, 639 F. App'x at 814; *Lewis v. Comm'r of Soc. Sec.*, Civ. A. No. 15-6275, 2017 WL 6329703, at *8 (D.N.J. Dec. 11, 2017)).)

Regarding ALJ Damille's alleged failure to discuss Plaintiff's anxiety disorder in the paragraph B criteria, the Commissioner contends the decision shows "the ALJ considered Plaintiff's anxiety-related symptoms," and courts in this District have rejected similar arguments about an omitted listing where, as here, the paragraph B requirements across impairment listings are identical. (*Id.* at 12 (citing *Lori C. v. Comm'r of Soc. Sec.*, Civ. A. No. 23-4369, 2024 WL 4803787, at *7 (D.N.J. Nov. 15, 2024); *Dercole v. Saul*, Civ. A. No. 18-12887, 2021 WL 1399861, at *11 (D.N.J. Apr. 14, 2021).) Similarly, the Commissioner argues an ALJ may evaluate the relevant listings in combination if he or she makes this approach clear, and the sole, unpublished Third Circuit case Plaintiff cites to the contrary, *Torres*, 279 F. App'x 149, is out of step with other

Circuit decisions that endorse a combined analysis. (*Id.* at 14–15 (citing *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024); *Jones*, 364 F.3d at 506; *Klangwald v. Comm'r of Soc. Sec.*, 269 F. App'x 202, 204 (3d Cir. 2008)).) Moreover, the Commissioner points out Plaintiff has failed to explain "how his combined medical conditions satisfy all the criteria of any particular Listing," thus failing to meet his responsibility to show he has a qualifying disability. (*Id.* at 15 (citing *Holloman*, 639 F. App'x at 814; *Williams v. Barnhart*, 87 F. App'x 240, 243 (3d Cir. 2004); *Pelech v. Comm'r of Soc. Sec.*, Civ. A. No. 10-1024, 2011 WL 13873, at *7 (D.N.J. Jan. 4, 2011)).) Additionally, the Commissioner asserts an ALJ is not obligated to articulate specific support for the conclusion a claimant's impairment does not medically equal a listed impairment. (*Id.* at 13–14.) And the Commissioner contends all Plaintiff's arguments that ALJ Damille used improper considerations to find Plaintiff had only mild or moderate paragraph B limitations essentially ask the Court to improperly reweigh the evidence presented about his recall memory and daily activities and otherwise misapprehend what evidence an ALJ may consider. (*Id.* at 15–18 (citing *Chandler*, 667 F.3d at 359).) The Commissioner also argues many of Plaintiff's cited cases are factually distinct. (*Id.* at 19–21.)

Finally, the Commissioner refutes Plaintiff's claim that the decision's treatment of the paragraph C criteria was too cursory for judicial review, particularly in light of "Plaintiff's minimal treatment records, as well as his own reported independent activities of daily living," and his statements to Dr. Brown. (*Id.* at 18.) In particular, the Commissioner argues paragraph C requires showing far more involvement from a claimant's family members in managing his or her daily activities to constitute a "highly structured setting" under the regulation than what Plaintiff

adduced, much less that Plaintiff is unable to adapt to the requirements of daily life. (*Id.* at 18–19.)

During step three, the ALJ compares the medical evidence of a claimant's impairments with the Impairments List in 20 C.F.R. Part 404, Subpart P, Appendix 1, which are presumed severe enough to preclude any gainful work. *See Holley v. Colvin*, 975 F. Supp. 2d 467, 476 (D.N.J. 2013), *aff'd*, 590 F. App'x 167 (3d Cir. 2014). The listings articulated in the Impairments List are descriptions of various physical and mental illnesses and abnormalities, categorized by the body system they affect. *Sullivan v. Zebley*, 493 U.S. 521, 529–30 (1990). All impairments are defined "in terms of several specific medical signs, symptoms, or laboratory test results." *Id.* at 530. "If a claimant's impairment meets or equals one of the listed impairments, he will be found disabled. . . . If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to step four." *Holley*, 975 F. Supp. 2d at 476. To be found disabled, however, the claimant "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan*, 493 U.S. at 531.

"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.*; *see* Social Security Ruling ("SSR") 83-19, Dep't of Health & Human Servs. Rulings 90 (Jan. 1983) ("An impairment meets a listed condition . . . only when it manifests the specific findings described in the set of medical criteria for that listed impairment."); 20 C.F.R. § 416.926(a) (1989) (noting claimant's impairment is "equivalent" to listed impairment "if the medical findings are at least equal in severity and duration to the criteria of any listed impairment"). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531–32 (citing SSR 83-19, at 91–92

("[I]t is incorrect to consider whether the listing is equaled on the basis of an assessment of *overall* functional impairment. . . . The functional consequences of the impairments . . . irrespective of their nature or extent, *cannot* justify a determination of equivalence" [sic].)).

To conclude an applicant is not disabled under the step three analysis, the ALJ must "set forth the reasons for [her] decision." *Burnett*, 220 F.3d at 119 (remanding where ALJ made only conclusory statements without mentioning any specific listed impairments or explaining reasoning). Conclusory statements have been found to be "beyond meaningful judicial review." *Cotter v. Harris*, 642 F.2d 700, 704–05 (3d Cir. 1981).

As the Third Circuit has explained, the ALJ is not required to "use particular language or adhere to a particular format in conducting his analysis . . . [but must] ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505. The ALJ satisfies this standard by "clearly evaluating the available medical evidence in the record and then setting forth that evaluation in an opinion, even where the ALJ did not identify or analyze the most relevant Listing." *Scatorchia v. Comm'r of Soc. Sec.*, 137 F. App'x 468, 470–71 (3d Cir. 2005).

Listings 12.04, 12.06, and 12.15 provide multiple ways to demonstrate the existence of a severe mental impairment based on satisfying certain criteria. All three listings have requirements listed in paragraphs A, B, and C. The listings may be satisfied by the applicant meeting the criteria in both paragraphs A and B, or A and C. 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 12.04, 12.06, 12.15.

Paragraph B for the three listings is the same and requires showing the applicant has an "[e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning: 1. Understand, remember, or apply information. 2. Interact with others. 3. Concentrate, persist, or maintain pace. 4. Adapt or manage oneself." *Id.* §§ 12.04(b), 12.06(b),

12.15(b) (internal citations omitted). A limitation is "marked" when the claimant is "seriously limited" in his or her ability to function independently, appropriately, effectively, and on a sustained basis in an area; an "extreme" limitation means the claimant is "not able" to function independently, appropriately, effectively, and on a sustained basis in this area. *Id.* at § 12.00F(2). Paragraph C for the three listings is also the same, requiring Plaintiff to demonstrate a disorder that is "serious and persistent," defined as a

> medically documented history of the existence of the disorder over a period of at least 2 years, and . . . evidence of both:
> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder; and
> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.

*Id.* ¶¶ 12.04(c), 12.06(c), 12.15(c) (internal citations omitted).

An ALJ's decision on step three need not address every minor piece of medical evidence in the record but need only show a meaningful consideration of the elements of the listings, and whether the weight of medical evidence presented shows Plaintiff meets these elements. Although "conclusory statements" that an impairment does not meet a certain listing are insufficient, courts have routinely upheld an ALJ's reasoning when it considers the relevant medical evidence in evaluating whether the claimant has met the specific medical requirements of the listings. *See Parrotta v. Kijakazi*, Civ. A. No. 21-13602, 2022 WL 2289554, at *9–11 (D.N.J. June 24, 2022) (finding ALJ based step three determination on substantial evidence because ALJ's decision evaluated specific symptoms included in listings and considered medical evidence to determine whether symptoms were met); *Rivera v. Saul*, Civ. A. No. 20-05308, 2021 WL 5122075, at *9–10 (D.N.J. Nov. 4, 2021) (finding ALJ's reasoning at step three allowed for meaningful judicial review, as ALJ listed sources considered in review, identified claimant's severe and non-severe

21

impairments, and indicated she reviewed medical record); *Dance v. Comm'r of Soc. Sec.*, Civ. A. No. 20-03141, 2021 WL 3144696, at *4–5 (D.N.J. July 26, 2021) (finding ALJ's reasoning at step three based on substantial evidence in part because Plaintiff, on appeal, failed to specifically match proffered medical evidence to elements of relevant listing). An ALJ is entitled to focus on the evidence they deem most probative, and "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." *Frederick F. v. Comm'r of Soc. Sec.*, Civ. A. No. 20-11500, 2022 WL 445538, at *2 (D.N.J. Feb. 14, 2022) (quoting *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004)); *see also Gunn v. Kijakazi*, Civ. A. No. 22-995, 2023 WL 8436054, at *7 (E.D. Pa. Dec. 5, 2023) (same); *Jose L. v. Comm'r of Soc. Sec.*, Civ. A. No. 20-09749, 2022 WL 603001, at *5 (D.N.J. Mar. 1, 2022) (same).

The Court finds ALJ Damille's step three determination that Plaintiff did not meet any listing in the Impairment List or establish medical equivalence is supported by substantial evidence. First, Plaintiff's complaints ALJ Damille omitted information necessary for proper review by neglecting to cite listing 12.06 for anxiety disorder or by not discussing the paragraph A criteria are, at most, harmless errors. It is clear from the text ALJ Damille did consider the impact of Plaintiff's anxiety disorder because he referred to Plaintiff's anxiety disorder explicitly throughout the decision. (Tr. at 20; 21; 23–24.) Moreover, the paragraph B and C criteria for listings 12.04 and 12.15, the listings ALJ Damille did explicitly name, are identical to those for 12.06. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00A. Contrary to Plaintiff's view, the Third Circuit has expressly found "the omission of the 'paragraph A' analysis does not render the ALJ's decision unreviewable" where it is clear, as here, that "the ALJ's decision rested on the absence of both 'paragraph B' and 'paragraph C' criteria." *Holloman*, 639 F. App'x at 814.

Regarding the substance of ALJ Damille's analysis of the paragraph B and paragraph C

criteria for Plaintiff's severe impairments, the decision indicates ALJ Damille considered the evidence in the record to conclude Plaintiff had only mild or moderate paragraph B limitations, and paragraph C was not satisfied.[9] ALJ Damille addressed each of the paragraph B criteria separately, drawing on Plaintiff's own testimony, the Function Report, and Dr. Brown's examination to find Plaintiff had mild limitations in "understanding, remembering or applying information" and "adapting or managing oneself," but moderate limitations in "interacting with others" and "concentrating, persisting or maintaining pace." (Tr. at 21.) While Plaintiff argues ALJ Damille's analysis repeats the same evidence from Dr. Brown's examination throughout, this is likely because it is the only relevant evidence Plaintiff provided; as ALJ Damille notes in the step four discussion, there are no other treatment records, medical notes, or mental status examinations in the record. (*Id.* at 24.) Further, ALJ Damille's written decision clearly indicates he focused on different aspects of the limited record evidence, including Dr. Brown's examination, based on their relevance to the paragraph B criteria. For example, in assessing Plaintiff's ability to understand, remember, and apply information, ALJ Damille cited parts of Dr. Brown's examination involving

---

[9] To the extent Plaintiff argues ALJ Damille did not adequately consider each listing separately and in combination, this argument is essentially foreclosed by the Third Circuit, as it has upheld part three determinations where, as here, the ALJ simply stated he considered the impairments "singly and in combination." (Tr. at 20.) *See Morrison ex rel. Morrison* v. Comm'r of Soc. Sec., 268 F. App'x 186, 188 (3d Cir. 2008) ("The ALJ, however, explicitly indicated a number of times that he was considering the impairments in combination. . . . We see no reason not to believe him."); *see also Gainey v. Astrue*, Civ. A. No. 10-1912, 2011 WL 1560865, at *12 (D.N.J. Apr. 25, 2011) ("[T]he ALJ's detailed analysis of the individual impairments and conclusion that Plaintiff did not have 'an impairment or combination of impairments' that met or equaled a listing is sufficient [to show the ALJ considered the combination of impairments]."); *Gonzalez v. Comm'r of Soc. Sec.*, Civ. A. No. 19-21276, 2021 WL 5027986, at *5 (D.N.J. Oct. 28, 2021) ("Insofar as Plaintiff contends that the ALJ erred in failing to consider all her impairments in combination at step three, . . . her argument lacks merit. Indeed, the ALJ expressed at the beginning of his step three discussion that he considered Plaintiff's impairments in combination, . . . and there is 'no reason not to believe' that the ALJ did so." (quoting *Granados v. Comm'r of Soc. Sec.*, Civ. A. No. 13-781, 2014 WL 60054, at *9 (D.N.J. Jan. 7, 2014))).

memory exercises, whereas in evaluating Plaintiff's ability to interact with others, ALJ Damille focused on Dr. Brown's report of Plaintiff's presentation, eye contact, and manner of speaking. (*Id.* at 21.) In light of the content of ALJ Damille's decision, Plaintiff's argument, followed to its logical conclusion, improperly asks the Court to reassess the record evidence and arrive at its own factual conclusions. *See Chandler*, 667 F.3d at 359 (holding reviewing courts "are not permitted to reweigh the evidence or impose their own factual determinations").

ALJ Damille's paragraph C determination is also supported by substantial evidence. Courts in this Circuit have found no harmful error when, following a fulsome analysis on other listing criteria, an ALJ draws on the facts adduced in that analysis to find the claimant does not meet the paragraph C criteria either. *See, e.g.*, *Corbett v. Saul*, Civ. A. No. 3:18-01790, 2019 WL 4793043, at *8 (M.D. Pa. Sept. 10, 2019), *report and recommendation adopted*, Civ. A. No. 3:18-1790, 2019 WL 4750341 (M.D. Pa. Sept. 30, 2019) (holding paragraph C supported by substantial evidence discussed in analysis of paragraphs B and A); *Woods v. Comm'r of Soc. Sec.*, Civ. A. No. 2:16-01657, 2017 WL 2815075, at *6 (D.N.J. June 29, 2017) (finding substantial evidence supported paragraph B and paragraph C decisions and discussing supporting evidence considered by ALJ for both criteria together); *Marilyn H. v. Comm'r of Soc. Sec.*, Civ. A. No. 21-03334, 2024 WL 1092503, at *7 n.5 (D.N.J. Mar. 13, 2024) ("Plaintiff's arguments about the ALJ's assessment of the paragraph C criteria are likewise unavailing. The ALJ explains that 'the evidence fails to establish the presence of the "paragraph C" criteria because the claimant has no more than moderate limitations in her ability to adapt or manage herself.' . . . Further discussion would be unnecessarily duplicative as the functional area of adapting and managing oneself is also a paragraph B criteria which the ALJ properly examined[.]"); *Kenneth S. v. O'Malley*, Civ. A. No. 2:23-22119 (BRM), 2025 WL 866008, at *9 (D.N.J. Mar. 19, 2025) (finding single paragraph

analysis of paragraph C criteria was sufficient for meaningful review and supported substantial evidence). Here, ALJ Damille referred to the record generally, after making specific references in the paragraph B determination on similar topics, and found it did not establish Plaintiff had only marginal adjustment, the C2 requirement.[10] (Tr. at 22.) As a claimant must establish C1 and C2 criteria are present, this finding is sufficient to decide Plaintiff did not meet the listing requirements for a serious and persistent mental disorder. *See, e.g.*, *Corbett*, 2019 WL 4793043 at *7.

Accordingly, ALJ Damille's step three analysis was supported by substantial evidence, and the ALJ properly proceeded to step four.

### B.  Plaintiff's Challenge to ALJ Damille's Step Four RFC Determination

Plaintiff also contests ALJ Damille's RFC determination as lacking substantial evidence. (ECF No. 14 at 29.) Asserting an ALJ has an obligation to make an RFC determination in light of all the record evidence and to enable judicial review with "interplay" between his or her findings and the record evidence, Plaintiff argues ALJ Damille failed to provide "a decisional rationale" for the RFC, and that it is contradicted by the recited evidence. (*Id.* at 29–38.) For example, Plaintiff contends ALJ Damille acknowledged Plaintiff's social anxiety is "his most significant problem." (*Id.* at 38–39 (quoting Tr. at 24).) Yet Plaintiff argues the ALJ does not explain how this acknowledgment influenced the determination that Plaintiff could have occasional contact with supervisors and interact (but not work in tandem) with coworkers. (*Id.*) Plaintiff also faults the decision because he claims it does not adequately explain how he could perform any unskilled role despite his recognized concentration deficits, which Plaintiff claims would require breaks greater than 10% of work time. (*Id.* at 39–40.) Finally, Plaintiff argues ALJ Damille cursorily

---

[10] While not explicitly referenced in this section, the Court also notes Plaintiff's self-assessment in the Function Report of his ability to "handle changes in routine" was "I do ok [sic]," a statement which aligns with ALJ Damille's finding Plaintiff did not have marginal adjustment. (Tr. at 288.)

dismissed medical evidence in the record (including the VA's finding of 70% service-related disability), as well as the Function Report and Third-Party Function Report,[11] by generally referencing "the *overall* medical evidence of record." (*Id.* at 40–41 (quoting Tr. at 25).)

Conversely, the Commissioner contends ALJ Damille's RFC evaluation is supported by substantial evidence, and Plaintiff failed to support further limitations through the evidentiary record. (ECF No. 16 at 22.) The Commissioner argues ALJ Damille properly relied on the limited medical record Plaintiff provided, which did not substantiate Plaintiff's testimony, and Dr. Brown's evaluation, which classified Plaintiff's cognitive and intellectual functioning as average and appropriate. (*Id.* at 23–24.) In response to Plaintiff's assertion that ALJ Damille ignored other credible medical opinions, the Commissioner notes Plaintiff did not identify any contradictory medical records, and the ALJ's findings align with the medical opinions of prior state agency evaluations in addition to Dr. Brown. (*Id.* at 24–25.) Finally, the Commissioner rejects Plaintiff's contention ALJ Damille's RFC failed to include a limitation that Plaintiff would be "off task" more than 10% of the time because this was posed as a hypothetical question to the vocational expert and "does not mean there is enough evidence to support it or that the ALJ is bound to endorse it." (*Id.* at 25 (citing *Pearson v. Comm'r of Soc. Sec.*, 839 F. App'x 684 (3d Cir. 2020).)

At step four in the disability determination process, an ALJ must assess the claimant's RFC and compare it to her past relevant work. 20 C.F.R. §§ 404.1520(e), (f); *Bowen*, 482 U.S. at 141. The claimant bears the burden of proof on step four, *see Sykes*, 228 F.3d at 263, including to present the facts necessary for the ALJ to assess the claimant's RFC, *Bowen*, 482 U.S. at 146 n.5 ("The claimant . . . must bear the burden . . . of showing . . . *at step four that the impairment*

---

[11] Plaintiff also faults ALJ Damille for discounting these reports for not being medical records, which he contends is improper. (ECF No. 14 at 41 n.11 (citing *Maellaro v. Colvin*, Civ. A. No. 3:12-01560, 2014 WL 2770717 (M.D. Pa. Jun. 18, 2014)).)

*prevents him from performing his past work*." (emphasis added)). On appeal, a claimant must show that (1) an error occurred; and (2) but for that error, she might have proven her disability. *See Holloman*, 639 F. App'x at 814. If a claimant believes an error was made, she "must clearly identify the error and explain how the error actually 'affect[ed] [his or her] "substantial rights."'" *Id.* at 814 n.3 (first alternation in original) (quoting *Shinseki*, 556 U.S. at 407).

Although an ALJ is required to "consider all evidence before him" and "give some indication of the evidence which he rejects and his reason(s) for discounting such evidence" *Burnett*, 220 F.3d at 121, the ALJ's reasoning may be implicit in the decision. *See Smith v. Astrue*, 961 F. Supp. 2d 620, 652 (D. Del. 2013) ("Plaintiff is correct that the ALJ failed to explicitly assess the credibility of Mrs. Smith's testimony or assign her testimony a particular amount of weight. However, a fair reading of the ALJ's decision suggests that the ALJ did implicitly make these judgments."); *Wise v. Comm'r of Soc. Sec.*, 626 F. App'x 357, 360 (3d Cir. 2015) ("We conclude . . . the ALJ's discussion of the evidence in the record that implicitly supported Dr. Rohar's criticism provided a reasonable basis for the ALJ not to include a limitation in the RFC about Wise's inability to adapt to normal work pressures or changes."). Indeed, the Third Circuit has held the Social Security Act "requires administrative judges to explain only the dispositive reasons for their decisions, not everything else that they considered" in their decision-making process, and does not mandate use of "magic words" from the statute or regulations. *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024). It is sufficient for the RFC determination to be supported by "substantial evidence" in the entire record, and it is unnecessary for the ALJ to engage in an explicit "function-by-function" analysis where the reasoning is implicit in the record. *Glass v. Comm'r of Soc. Sec.*, Civ. A. No. 18-15279, 2019 WL 5617508, at *8 (D.N.J. Oct. 31, 2019); *Chiaradio v. Comm'r of Soc. Sec.*, 425 F. App'x 158, 161 (3d Cir. 2011) ("Although the

ALJ did not make a task by task analysis, the overall review carefully considered Chiaradio's past relevant work and the ALJ assessed what Chiaradio could reasonably do."); *Donna R. v. Kijakazi*, Civ. A. No. 20-15449, 2022 WL 13009149, at *12 (D.N.J. Oct. 21, 2022) (finding substantial evidence for step four determination where "the ALJ's discussion at step two demonstrates that he implicitly discounted that examiner's opinions when assessing Plaintiff's limitations in her ability to understand, remember, or apply information and to concentrate, persist, or maintain pace").

ALJ Damille's step four analysis is supported by substantial evidence. ALJ Damille first summarized all the relevant evidence of Plaintiff's abilities and impairments, including Plaintiff's hearing testimony, the Function Report, Third Party Function Report, medical treatment notes, the Dr. Brown examination, the VA disability determination, and the prior DDS evaluations. (Tr. at 23–25.) The decision makes clear ALJ Damille's RFC determinations were based on Dr. Brown's findings, Plaintiff's own reports of his daily activities, the fact there was no record documentation of significant mental health exacerbations, "any cognitive defects," or "treatment notes or mental status examinations results," and the record even indicated Plaintiff's mental health had improved with treatment. (*Id.* at 24.) ALJ Damille then connected this evidence to the limits in his RFC determination. (*Id.* at 26 ("[I]n viewing the relevant evidence in [the] light most favorable to the claimant, based on the record in its [entirety], including the testimony adduced at the hearing, I find the claimant would have difficulty performing complex tasks.").) ALJ Damille therefore showed he considered all the evidence in the record and gave a basis for his decision, which is all the substantial evidence standard requires. *See Burnett*, 220 F.3d at 121; *Zaborowski*, 115 F.4th at 639.

Plaintiff's other quarrels with ALJ Damille's treatment of certain evidence and the hypotheticals posed to the vocational expert do not change the result here. Regarding the "off-

task" work percentage raised to the vocational expert in a hypothetical, the Third Circuit has expressly held an ALJ is not bound to a hypothetical RFC when another RFC is credibly established in the record in nearly the same circumstances. *See Pearson*, 839 F. App'x at 690 ("The ALJ's subsequent hypothetical question about a person who would be off-task fifteen percent of the time, does not bind him to the premise of the question, nor to the expert's answer that such a hypothetical person would not be capable of performing past work.").

Plaintiff also complains ALJ Damille failed to credit the VA's finding he is 70% service-connected disabled, but courts in this Circuit have upheld ALJ determinations that discounted the persuasiveness of a VA disability decision. *See Durden v. Colvin*, 191 F. Supp. 3d 429, 453 (M.D. Pa. 2016) (finding substantial evidence supported according little weight to VA 70% disability determination because "the standards for determining disability under the VA are substantively different from those of the SSA" and "the VA rating determination was inconsistent with the medical evidence"); *Stancavage v. Saul*, 469 F. Supp. 3d 311, 335–36 (M.D. Pa. 2020) ("Courts have ruled that an ALJ commits no error in finding that the VA's determination of 'total disability' should be accorded less weight[.]"); *Dennis L. v. Kijakazi*, Civ. A. No. 20-12362, 2022 WL 787950, at *9 (D.N.J. Mar. 15, 2022) (affirming RFC determination where ALJ "clearly relied upon and performed his independent evaluation of the medical evidence, including that from the VA medical staff, as it pertained to the SSA's disability determination" to afford VA disability little weight); *accord Drzal v. Saul*, Civ. A. No. 18-10316, 2020 WL 1528039, at *12 (D.N.J. Mar. 31, 2020) (finding no error in discounting IRS disability determination where ALJ explained other federal agency findings do not bind SSA and IRS award did not provide assessment of claimant's work limitations). Here, ALJ Damille provided reasons for affording the service-connected disability evaluation little weight that have been accepted by other courts

in this Circuit. ALJ Damille noted that other agencies' findings are "not entitled to any particular weight" because they use "a different standard in determining disability," and the records Plaintiff provided of the VA finding "do not contain any objective medical signs, symptoms or laboratory results corroborating the conclusion nor do they provide vocational assessment" the ALJ could compare to medical evidence in the record. (Tr. at 25.) ALJ Damille's determination the VA findings were not persuasive was therefore not error (and, in light of the other evidence presented, any error was likely harmless). *See Drzal*, 2020 WL 1528039 at *12; *Dennis L.*, 2022 WL 787950 at *9; *Durden*, 191 F. Supp. 3d at 454 ("The Court finds that the ALJ committed no error in according little weight to the VA rating of 70 percent for PTSD. Even if the ALJ erred, such [error] would be harmless and a remand would not alter the outcome of the case.").

Finally, Plaintiff's critique that ALJ Damille ignored the Function Report and Third Party Function Report is unavailing because the information they contained was clearly part of the RFC determination. ALJ Damille explicitly relied on these reports to determine "[Plaintiff's] fairly active daily activities . . . support a residual functional capacity reached in this decision" (Tr. at 25), as this Circuit has determined is appropriate, *see Turby v. Barnhart*, 54 F. App'x 118, 121 n.1 (3d Cir. 2002) (affirming an ALJ may consider "the number and type of activities in which the claimant engages"); *Miller v. Comm'r of Soc. Sec.*, No. 20-3642, 2021 WL 3137439, at *3 (3d Cir. July 26, 2021) (noting activities claimant performs on a regular basis are "appropriately indicative" of claimant's "ability to work" and finding ALJ properly considered claimant "could perform matters of personal care, do laundry, and babysit a one-year-old child"); *see also Seyler v. Kijakazi*, Civ. A. No. 4:21-581, 2022 WL 4483826, at *2 (M.D. Pa. Sept. 27, 2022) (finding ALJ properly considered claimant's performance of household tasks). Plaintiff's citation to *Maellero* is plainly distinguishable because there, the ALJ's reasons for discounting a

third-party statement were based solely on the fact the submitter was a layperson with motivation to support her husband's disability claim, whereas here, ALJ Damille cited the substance of the reports as influencing his RFC determination, in addition to the fact they were not medical opinion evidence. *Maellaro*, 2014 WL 2770717 at *11–12.

ALJ Damille's step four RFC determination was therefore supported by substantial evidence and not in error.

## V.    CONCLUSION

For the reasons set forth above, the Court finds Plaintiff failed to show ALJ Damille erred in determining Plaintiff was not entitled to SSI and/or DIB benefits under the Act. Therefore, the Commissioner's decision is **AFFIRMED**. An appropriate order follows

**Dated:** June 20, 2025                              */s/ Brian R. Martinotti*
                                                      **HON. BRIAN R. MARTINOTTI**
                                                      **UNITED STATES DISTRICT JUDGE**

31